

# The Attorney General of Texas

March 17, 1981

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Oscar H. Mauzy, Chairman
Senate Committee on Jurisprudence
State Capitol
Austin, Texas   78711

Opinion No.   MW-306

Re:  Constitutionality of section 3e(a) of article 42.12 of the Code of Criminal Procedure

Dear Senator Mauzy:

You have requested our opinion regarding the constitutionality of a proposal to amend section 3e(a) of article 42.12, Texas Code of Criminal Procedure, commonly known as the "shock probation" statute. That statute now reads:

> For the purposes of this section, the jurisdiction of the courts in this state in which a sentence requiring confinement in the Texas Department of Corrections is imposed for conviction of a felony shall continue for 120 days from the date the execution of the sentence actually begins. After the expiration of 60 days but prior to the expiration of 120 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may, on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article, if such sentence is otherwise eligible for probation under this article and prior to the execution of such sentence, the defendant had never been incarcerated in a penitentiary serving a sentence for a felony and in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary. Probation may be granted under this section only if the offense for which the defendant was sentenced was an offense other than criminal homicide, rape, or robbery.

You first ask whether the grant of shock probation may be conditioned upon a defendant's pleading guilty or nolo contendere and waiving his right of appeal.

Under the proposal, a defendant, in order to be eligible for shock probation, would be obliged to waive his federal constitutional right to trial by jury. In United States v. Jackson, 390 U.S. 570 (1968), the United States Supreme Court considered the constitutionality of a provision of the Federal Kidnaping Act, 18 U.S.C. section 1201(a), which made interstate kidnaping under certain circumstances an offense punishable by death "if the verdict of the jury shall so recommend." The statute did not provide a "procedure for imposing the death penalty upon a defendant who waives the right to jury trial or upon one who pleads guilty." 390 U.S. at 571. In striking down the death penalty provision, the Supreme Court declared:

> Our problem is to decide whether the Constitution permits the establishment of such a death penalty, applicable only to those defendants who assert the right to contest their guilt before a jury. The inevitable effect of any such provision is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional.

390 U.S. at 581. Even if a valid statutory purpose is presumed, however, it:

> cannot be pursued by means that needlessly chill the exercise of basic constitutional rights.

Id. at 582.

In the years since its decision in Jackson, the Court has repeatedly cautioned against a broad reading of that opinion. In Chaffin v. Stynchcombe, 412 U.S. 17 (1973), the Court warned:

> Jackson did not hold. . . that the Constitution forbids every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.

412 U.S. at 30. In Corbitt v. New Jersey, 439 U.S. 212 (1978), the Court considered a New Jersey statute to which the Jackson rationale would arguably have applied. See United States v. Chavez, 627 F. 2d 953, 956 (9th Cir. 1980). Under the statute, a defendant convicted of first-degree murder by a jury was sentenced to mandatory life imprisonment. If the defendant pled non vult, a plea similar to nolo contendere, the judge could sentence him to either life or to the punishment imposed for second degree murder, a maximum 30-year term. The majority opinion distinguished the statute from the statute in Jackson on two grounds: the unique nature of the death penalty; and the fact that the maximum term could still be imposed in New Jersey by a judge accepting a non vult plea, whereas the death penalty could not have been imposed upon a defendant pleading guilty under the Federal Kidnaping Act. 439 U.S. at 217. In addition, as the concurring opinion pointed out, a defendant who went to trial on a general murder indictment in New Jersey might be found guilty only of second degree murder, with a maximum punishment of 30 years' imprisonment. 439 U.S. at 226-27.

This last distinction between Corbitt and Jackson is also one difference between the Corbitt statute and the proposal you have submitted to us: in the present instance, a defendant who opts for trial is absolutely precluded from consideration for shock probation. But although Corbitt in itself may not be dispositive of your inquiry, the general tenor of relevant Supreme Court opinions since Jackson indicates that the proposal would not be held violative of the Federal Constitution.

In United States v. Chavez, 627 F. 2d 953 (9th Cir. 1980), the Court of Appeals for the Ninth Circuit recently considered a federal statute which provided for the mandatory imposition of the costs of prosecution upon a defendant convicted of willfully failing to file an income tax return. Like that in Jackson, the Chavez statute reserved its maximum penalty for those who insisted upon their right of trial. The court, noting that the Supreme Court "has not enthusiastically embraced the 'chill' rationale articulated in Jackson," 627 F. 2d at 956, declared that it was unable to:

> say with any confidence that the costs of prosecution provision of section 7203 does in fact penalize a defendant's exercise of his constitutional rights. . . . The presence of the mandatory costs of prosecution provision does not, with any degree of certainty, substantially increase the threatened punishment. Any encouragement of the waiver of constitutional rights that this provision may induce is substantially different from the pressures that undeniably existed in Jackson, and cannot be said to be an impermissible burden upon the exercise of constitutional rights. In light of the fact that the provision does serve legitimate government purposes, we cannot say that it needlessly encourages the waiver of constitutional rights.

Id. at 957. The court, in displaying its fealty to the trend of the Supreme Court's post-Jackson decisions, has demonstrated that the Jackson rationale is, in all likelihood, presently applicable only to statutes in which the death penalty is reserved for those defendants who exercise a constitutional right.

Viewed historically, United States v. Jackson may be seen as an aberration in a long line of decisions which have accorded constitutional sanction to the process of plea bargaining. See, e.g., Blackledge v. Allison, 431 U.S. 63, 71 (1977); Santobello v. New York, 404 U.S. 257, 260-61 (1971); Brady v. United States, 397 U.S. 742, 751-52 (1970). In Bordenkircher v. Hayes, 434 U.S. 357 (1978), the Supreme Court approved a prosecutor's threat that a defendant must plead guilty with a recommended five-year sentence, or be reindicted as an habitual criminal. The Court concluded that the prosecutor had done nothing more than "openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution." 434 U.S. at 365. Although such a choice might discourage assertion of the right to trial, its effect was "an inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas." Id. at 364. The majority in Corbitt v. New Jersey, supra, found that the New Jersey sentencing scheme simply imposed by statute the same difficult choice as had been imposed by the prosecutor in Bordenkircher. As a result, the majority found "no difference of constitutional significance" between the two cases. 439 U.S. at 221.

Although the dissenting opinion in Corbitt argues that plea bargaining negotiations between prosecutor and defendant do not burden constitutional rights to the same degree as a statutory scheme which discourages assertion of a defendant's right to trial by imposing a different standard of punishment dependent solely upon the plea entered, it is clear that the potential effect upon a defendant is the same. In either case, the possibility of leniency is available only to a defendant who foregoes the exercise of his right to trial by jury and its accompanying constitutional rights. As has been noted, since the Supreme Court found no constitutionally significant difference between Bordenkircher and Corbitt, "the Corbitt court has paved the way for a statutory imposition of the prosecutor's threat in Bordenkircher." Note, 93 Harv. L. Rev. 73, 81 (1979). In United States v. Chavez, supra, the court of appeals recognized that, when read together, Bordenkircher and Corbitt compel the conclusion that virtually any such legislative carrot-and-stick approach that avoids imposition of the death penalty will withstand federal constitutional attack. In our opinion, the proposal you have submitted does nothing more than offer substantial benefits in return for a plea of guilty. Under such circumstances, it does not contravene the fifth, sixth or fourteenth amendments to the United States Constitution.

Neither have we discovered any decision which indicates that the proposal would run afoul of sections 3, 3a, 13 or 19 of article I of the Texas Constitution. In the absence of any contrary authority, Texas courts would, in our opinion, follow the bellwether views of the United States Supreme Court and hold that the proposal does not violate any of those provisions of the Texas Constitution.

Your second question is whether, if a judge is required to hold a hearing before granting a motion for shock probation, he may deny such a motion without a hearing. You also ask whether, if he may deny the motion without a hearing, he may do so if the defendant has plea bargained for shock probation.

It is well established that probation is granted to a defendant as a privilege and not as a right. Berman v. United States, 302 U.S. 211 (1937); Bryson v. United States, 265 F. 2d 9, 14 (9th Cir. 1959), cert. denied, 360 U.S. 919 (1959). A sentencing judge's discretion in granting or denying probation is subject, for constitutional purposes, only to the requirement that it be "reasonably exercised." United States v. Hayward, 471 F. 2d 388, 391 (7th Cir. 1972). See Whitfield v. United States, 401 F. 2d 480, 482 (9th Cir. 1968), cert. denied, 393 U.S. 1026 (1969). As the court of criminal appeals has stated:

> [w]hen the trial is before the court, and a motion for probation
> is filed, the trial judge has absolute and unreviewable discretion
> either to refuse or to grant probation.

Trevino v. State, 519 S.W. 2d 864, 867 (Tex. Crim. App. 1975). See also Saldana v. State, 493 S.W. 2d 778 (Tex. Crim. App. 1973). Although the process of probation revocation must now be accorded the rudiments of due process, Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973), no such constitutional protection attaches to the original grant or denial of probation. See A. Campbell, Law of Sentencing, §19, at 80 (1978 ed.). We are aware of no decision which has held that a hearing is constitutionally required whenever a motion for probation is filed. Accordingly, we believe that a judge may constitutionally deny a motion for shock probation with or without a hearing.

As to whether the result is different when a defendant has entered into a plea bargain for shock probation, we understand your inquiry to refer to a plea bargain involving only the defendant and the prosecutor. It is clear that a plea bargain in which the trial judge participates is binding on the state. Ex parte Jasper, 538 S.W. 2d 782 (Tex. Crim. App. 1976). But as the court of criminal appeals points out in Trevino v. State, 519 S.W. 2d 864 (Tex. Crim. App. 1975), the federal constitutional requirement imposed by Santobello v. New York, 404 U.S. 257 (1971), does not mean that a prosecutor's recommendation of probation pursuant to an agreement with the defendant should be binding on the trial court. 519 S.W. 2d at 867. So long as the trial judge is not a party to the plea bargain, he is free to deny a motion for shock probation without holding a hearing.

## SUMMARY

A proposal to condition a grant of shock probation upon a defendant's pleading guilty or nolo contendere and waiving his right of appeal would not contravene the sixth and fourteenth amendments to the United States Constitution. A trial judge may constitutionally deny a motion for shock probation without holding a hearing, so long as he is not a party to a plea bargain promising shock probation to the defendant in return for a guilty plea.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Gerald C. Carruth
Rick Gilpin